George L. **LONG**, Appellant,

v.

Claudio **CASTANEDA**, Sheriff of Hidalgo County, Texas, Appellee.

No. 621.

Court of Civil Appeals of Texas, Corpus Christi.

Dec. 30, 1971.

Second Motion for Rehearing Denied Jan. 20, 1972.

Cox & Patterson, J. W. Patterson, Jr., McAllen, for appellant.

Ewers, Toothaker, Ewers, Abbott, Evins & Talbot, O. C. Hamilton, Jr., Joe Friend, McAllen, for appellee.

## OPINION ON REHEARING

NYE, Justice.

Our original opinion is withdrawn and this opinion is substituted therefor. This suit was filed by the plaintiff to enjoin the execution sale of a mobile home by the Sheriff of Hidalgo County, Texas, and for damages against the Sheriff and a bank. On a hearing following the granting of a temporary restraining order, the trial court entered its interlocutory order refusing to grant a temporary injunction. Plaintiff Long has perfected his appeal to this Court.

George L. Long and the Northeast National Bank of San Antonio, Texas, as plaintiffs, brought suit against the Sheriff of Hidalgo County and the First National Bank and Trust Company of Lincoln, Nebraska. Long alleged that he is the owner of a 1968 Aristocraft Mobile Home; that the San Antonio Bank is the owner of a security interest or first mortgage interest in the mobile home; and that the Sheriff and the Nebraska Bank caused Long's mobile home to be seized and ordered sold on the 18th day of January, 1971 to satisfy a judgment that the Nebraska Bank has against the former owner of Long's mobile home. Plaintiffs contend that irreparable injury will occur to them if the Sheriff is permitted to sell the mobile home; that a purchaser at such sale would be at liberty to remove the home from the jurisdiction of this court and even from the continental limits of the United States. Plaintiffs further allege that they are the owners of a superior legal title to the home together with the exclusive right, title and interest in and to the home, and that when given a full and complete hearing they will prove their exclusive title and interest in the mobile home. Plaintiffs allege that they have no adequate remedy at law available to them and that because of the wrongful levy and taking of the mobile home from their property they have been damaged by the Nebraska Bank and Sheriff in the sum of $2500.00. Attached to their petition is a bill of sale to the trailer, a check, a note and other items evidencing a sale and verifications of their contentions.

The facts developed during the hearing on the temporary injunction show that Mrs. Vivian L. Black and her husband Walter I. Black were the previous owners of the mobile home. Walter I. Black died and Mrs. Black sold the home to Long. Long gave Mrs. Black his check for $3500.00 with instructions to deliver it to the San Antonio Bank to pay off the lien. The approximate balance of the purchase price (i.e. $4500.00) was paid to Mrs. Black by Long.

On or about February 20, 1970, the First National Bank and Trust Company of Lincoln, Nebraska, referred to as the Nebraska Bank, took judgment against Walter I. Black and Vivian L. Black. Long never knew of this judgment. An execution was issued on the judgment and delivered to the Hidalgo County Sheriff on October 19, 1970, several months after Black had died. The record shows that the attorney representing the Nebraska Bank[1] ascertained

---

1. The Nebraska Bank was a named party to this suit but it was never served nor did it make an appearance. The attorney who testified as to some ex parte facts concerning the Nebraska Bank is the same attorney who represents the Sheriff on this appeal.

that the title to the trailer was in the name of Walter I. and Vivian L. Black and that the first lienholder was the Northeast National Bank of San Antonio, Texas. On January 5, 1971, the attorney for the Nebraska Bank called the Northeast Bank to determine the amount of the lien. The San Antonio Bank advised the attorney for the Nebraska Bank that the lien had been paid off on January 5, 1971, and that the Bank did not then have any claim to it.[2]

The very next day, on January 6, 1971, the appellee Sheriff levied execution on the mobile home, taking it from Long's property and storing it on County property where it now remains. On January 8, 1971, Long discovered that the trailer was missing. He immediately reported a theft to the McAllen Police Department, which referred him to the Sheriff's Office. The Sheriff advised Long that they had custody of the trailer and that the Sheriff had posted notice of execution sale to be held on January 18. Long filed this suit against the Sheriff and on Friday, January 15 the trial court issued its temporary restraining order to prevent the sale of the mobile home on January 18. The hearing on the temporary injunction was heard on January 21, 1971. At the conclusion of the hearing, the trial court announced that the temporary injunction was denied and the temporary restraining order was dissolved. Long has perfected his appeal from the interlocutory order of the trial court. He posted a supersedeas bond while the trailer remains in the custody of the Sheriff appellee.

The Sheriff contends that he has the right to sell the trailer and by argument in his brief insists he will again attempt to sell the trailer before the case is tried on its merits. The appellee Sheriff makes additional contentions in answer to appellant's ten points of error, the first being that the appellant failed to show the absence of an adequate remedy at law; and second, that there was evidence that the

trailer belongs to the judgment debtor; therefore, he is justified in conducting an execution sale.

The Sheriff, on the other hand, in answering plaintiff's petition, advised the court that he would continue to obey all orders issued by the court and ". . . if this Court should make a judicial determination that the house trailer in question is for any reason not subject to execution, then this defendant will cease and desist all efforts to levy on and sell the above referred to house trailer and will return it to its lawful owner or will abide by such other orders as this Court herein may enter." The Sheriff has possession of the trailer, subject to plaintiff's supersedeas bond.

██ The rule of law in Texas is that the trial court is clothed with broad discretion in determining whether to issue or whether not to issue a temporary injunction to preserve the rights of the parties pending a final trial of the case. When that discretion is exercised, its orders should not be overturned unless the record discloses a clear abuse of discretion. Texas Foundries, Inc. v. International Moulders & F. Workers' Union, 151 Tex. 239, 248 S.W.2d 460 (Tex.Sup.1952). The extraordinary writ of injunction will not be granted where there is a plain and adequate remedy at law. Story v. Story, 142 Tex. 212, 176 S.W.2d 925 (1944).

Appellee defends the action of the trial court by contending that Long had an adequate remedy at law available to him under Rules 717 through 736, Texas Rules of Civil Procedure. These rules relate to trial of right of property. In connection with this argument appellee quotes from Hawkins v. Graham, 81 S.W.2d 754 (Tex. Civ.App.—San Antonio 1935, writ ref'd). The Hawkins case says in effect, that if the appellant had pursued the remedy of the trial of right of property, it would have afforded him *every protection sought in his equitable proceeding*. (Emphasis

---

2. The San Antonio Bank was a party plaintiff to this lawsuit, but took no ap-
parent action during the trial. It is not represented here on this appeal.

supplied.) Continuing, the appellee argues that since Long did not allege any facts that would excuse him from pursuing this remedy, Long was not entitled to the extraordinary writ of injunction which he sought. Therefore, the trial court was correct. The Sheriff makes one additional argument which is to the effect that even if the trailer is sold, since the trailer as such is not unique, money damages should be adequate for Long.

The general rule that the extraordinary writ of injunction will not be granted where there is a plain and adequate remedy at law is not rigidly enforced by the courts in this State. Many cases recognize the exceptions to the rule: That the relief at law must be *"plain and adequate"*, or it must be *"as practical and efficient to the ends of justice and its prompt administration"*, as is the equitable remedy of injunction. Brazos River Conservation & Reclamation District v. Allen, 141 Tex. 217, 171 S.W.2d 847 (1943); Story v. Story, supra.

■ Many of the older cases that have dealt with the denial of an equitable remedy because of an adequate legal remedy, did so when our courts of law and equity were separate. Today the injunction will not be granted if there is an adequate and plain remedy at law, but such remedy must be a prompt and efficient remedy, not merely an alternate remedy. If the plaintiff on a trial of the merits shows a clear right to be left in his undisturbed possession of his trailer by a finding of ownership, and/or the Nebraska Bank insists on invading that right without perfecting its execution (as we discuss hereafter) such invasion or future attempt should be prevented in its inception by injunction, instead of allowing the injury to be inflicted, and then leaving the party to his (maybe) legally adequate, but in fact generally very inadequate remedy of an action for damages. Sumner v. Crawford, 91 Tex. 129, 41 S.W. 994 (1897).

■ The contention that the trial of the right to this property is Long's only remedy is untenable under the undisputed facts before us. First, Long is suing for damages as well as possession. Second, if upon a final trial it is determined that Long is not the legal owner of the trailer but is subrogated to the San Antonio Bank's mortgage, a trial of the right of property cannot determine the question of priority of liens. Raysor v. Reid & Smith, 55 Texas 266 (1881); Groesbeck v. Evans, 40 Tex.Civ.App. 216, 83 S.W. 430 (1904). This remedy which is suggested by appellee, is only one of several alternate remedies that Long could have pursued if all of the parties involved became parties to the suit. Carmichael v. Page, 32 S.W.2d 674 (Tex.Civ.App.—Texarkana 1930, writ ref'd). The status quo of this subject property must remain unchanged until the trial court determines the relative equities and rights involved.

■ The Nebraska Bank is an indispensable party. Petroleum Anchor Equipment, Inc. v. Tyra, 406 S.W.2d 891 (Tex.Sup. 1966); Neel v. Seaman, 466 S.W.2d 278 (Tex.Sup.1971), reversing 461 S.W.2d 659. It must be made a party by service or by voluntary appearance in order for the court to make a proper final determination of all the rights of all the parties. Mrs. Black ought to be made a party. Rule 39(a), T.R.C.P.; Petroleum Anchor Equipment, Inc. v. Tyra, supra, see at page 893 of 406 S.W.2d. In any event, the Sheriff's contentions without the Nebraska Bank as a party, is untenable. The trial of right of property is not an adequate remedy.

The evidence shows that the alias writ of execution was issued on the 19th day of October 1970; it states in part that "WHEREAS, on the 20th day of February 1970 FIRST NATIONAL BANK AND TRUST COMPANY OF LINCOLN, A NATIONAL BANKING ASSOCIATION recovered a judgment in Cause No. A–11099 in the 92nd District Court of Hidalgo County, against Walter I. BLACK AND WIFE, VIVIAN L. BLACK, AND WALTER I. AND VIVIAN L. BLACK, INC. JOINTLY AND SEVERALLY for

the sum of $37,090.00 Dollars with interest thereon from the 28th day of July 1968, at 9% per cent per annum, and all costs of suit, . . ." The execution directs the Sheriff to take the goods, chattels, lands and tenements of the judgment debtor by levy and execution thereon. The Sheriff answered that he had on the 6th day of January 1971, levied upon one 1968 Aristocraft mobile home of Walter I. Black and wife Vivian L. Black. In his notice of Sheriff's Sale, he stated that he would on the 18th day of January 1971, sell for cash to the highest bidder, the property of Walter I. and Vivian L. Black.

▪ Writs of execution are returnable in either thirty, sixty or ninety days. Rule 621, T.R.C.P. The sale of the trailer was to be held on January 18, 1971, ninety-one days after the return was issued. Appellee now admits on rehearing that any sale by the Sheriff would have been void. Tudor v. Orr, 179 S.W.2d 796 (Tex.Civ.App.— Amarillo 1944); Towns v. Harris, 13 Tex. 507 (1854). Yet the Sheriff does not tender or offer to tender the trailer back to Long. The right of the Sheriff, by virtue of such a writ, to take and/or sell the property, ceases from the date the writ was returnable. Chance v. Pace, 151 S.W. 843 (Tex.Civ.App.—Galveston 1912) and authorities cited therein. The Sheriff argues, however, that the plaintiff could not have been damaged by such a sale because the sale was void and would, in effect, be no sale at all. We disagree.

▪ The Sheriff further admits on rehearing that if in fact there had been a bona fide sale from Black to Long, the execution sale would have been precluded. Such being the case, the trial court would be in error by permitting a sale, which upon its face was void and would therefore have placed a cloud on the title to the property in question. Art. 4642, subsection 4, Vernon's Ann.Civ.St.

The evidence is undisputed that Walter I. Black is dead; that Vivian L. Black was his wife and is living and now surviving him; that his widow had not qualified as independent executrix of his estate at the time of the hearing. The judgment by the Nebraska Bank was (among others) against Walter I. Black, the deceased. The record further shows that neither the First National Bank and Trust Company of Lincoln, Nebraska, nor Mrs. Black, individually or as representative of her husband's estate, or otherwise, were parties to this suit at the time of the hearing.

▪ A Sheriff's sale of the mobile home cannot now be validly held until a proper execution issues. Until such time the Sheriff has no authority to hold the subject trailer absent an order by the trial court. However, since the Sheriff still insists apparently, that he is entitled to sell the property by his resistance to the injunction in the trial court and here on appeal, a temporary injunction should issue by the trial court until the issue of ownership and damages are determined. It would have been provident for the Nebraska Bank to wait until a final determination is had of the relative rights of the parties involved, before insisting on an execution sale of this property.

The bill of sale from Vivian L. Black to appellant Long, by whatever authority she might have had, purports to convey the trailer to Long. This is in conflict with the Texas Highway Department's registration and title record. It showed that on January 18, 1971 (after the levy by appellee) the registered owner of the house trailer in question was in the name of Walter I. Black and Vivian L. Black and that a first lien existed in favor of the First National Bank of San Antonio, Texas. The lien information is in conflict with the direct testimony, that Long's $3500.00 check was to pay off the San Antonio Bank's lien.

▪ This case must therefore be reversed. First and foremost, it is essential that the writ of execution properly identify the judgment debtor. This has not been done. Its failure to do so also renders

the process void. Rule 629, T.R.C.P. If the true owner of the property is in fact the same as that which the Texas Highway Department's registration and title records indicate (i.e., Walter I. and Vivian L. Black), then an execution sale of the property belonging to a deceased person thereunder would for a further reason be void and of no force and effect. First National Bank of Bowie v. Cone, 170 S.W.2d 782 (Tex.Civ.App.—Fort Worth 1943, writ ref'd); Mackey v. Lucey Products Corp., 150 Tex. 188, 239 S.W.2d 607 (1951); Taylor v. Snow, 47 Tex. 462 (1877). A money judgment against a deceased defendant is a claim to be proved and claimed against the administration of his estate. Jenkins v. Cain, 72 Tex. 88, 10 S.W. 391 (1888) and see Dailey v. Wynn, 33 Tex. 614 (1871). There has been no showing that the Nebraska Bank has proved its claim and established its judgment accordingly. A judgment that is rendered against a person during his lifetime is no claim against his estate until it has been established as are other claims. According to the evidence, the record title on one hand is in the name of the deceased and the surviving widow. The undivided interest of the property belonging to the estate of Walter I. Black is not subject to this execution. The execution was issued after Black's death on a judgment obtained during the lifetime of the judgment debtor. The application of any other rule would impair the jurisdiction over the property of the deceased and would interrupt the orderly administration of the deceased's estate. First National Bank of Bowie v. Cone, supra; Mackey v. Lucey Products Corp., supra; Leonard v. Veazey, 242 S.W.2d 646 (Tex.Civ.App.—El Paso 1951); Hooper v. Caruthers, et al., 78 Tex. 432, 15 S.W. 98 (1890). See 24 Tex.Jur.2d, Executions, Secs. 34, 50, 61, 76, 89, 95, et seq. An execution after Black's death is void in the sense that it is wholly inoperative to pass title to or against anyone. The issuance of an injunction restraining such a sale is proper under such circumstances. Grissom v. F. W. Heitmann Co., 130 S.W.

2d 1054 (Tex.Civ.App.—Galveston 1939); 24 Tex.Jur.2d, Executions, § 70, p. 540.

■ Article 1436–1, "Motor Vehicles; Certification of Title Act", Sec. 4, defines "Owner". Subsequent sections require the delivery of a certificate of title to a new purchaser and other sections make it unlawful to sell a motor vehicle (which include house trailers) without a proper certificate of title in the seller's possession. Still another section (Sec. 53) makes all sales in violation of the Act void. It is clear, however, from the decisions of this State that a failure to comply with the statutory requirements relating to the transfer of a house trailer does not render the transfer void as between the parties. Elder Chevrolet Co. v. Bailey County Motor Co., 151 S.W.2d 938 (Tex.Civ.App.—El Paso 1941); Truck Insurance Exchange v. Schuenemann, 391 S.W.2d 130 (Tex.Civ.App.—San Antonio 1965, n. r. e.). And see Pioneer Mutual Compensation Co. v. Diaz, 142 Tex. 184, 177 S.W.2d 202 (1944); Empire Gas & Fuel Co. v. Meugge, 135 Tex. 520, 143 S.W.2d 763 (1940); Clemons v. Lyles, 249 S.W.2d 287 (Tex.Civ.App.—Galveston 1952, ref. n. r. e.); Hicksbaugh Lumber Co. v. Fidelity & Casualty Co. of New York, 177 S.W.2d 802 (Tex.Civ.App.—Galveston 1944); Strickland Transportation Co. v. Ingram, 403 S.W.2d 192 (Tex.Civ.App.—Texarkana 1966); National Auto and Casualty Insurance Co. v. Alford, 265 S.W.2d 862 (Tex.Civ.App.—Eastland 1954, n. r. e.); Viator v. American General Ins. Co., 411 S.W.2d 762 (Tex.Civ.App.—Beaumont 1967, ref'd n. r. e.); Cimarron Insurance Co., Inc. v. Price, 409 S.W.2d 601 (Tex.Civ.App.—Austin 1966, n. r. e.); Allstate Ins. Co. v. Snyder, 470 S.W.2d 282 (Tex.Civ.App.—Amarillo 1971). This would also be true under the same circumstances if the Nebraska Bank knew of the transfer to Long. The evidence strongly suggests that the Nebraska Bank knew that Long was the owner, since the attorney for the Nebraska Bank called the San Antonio Bank to determine if the lien had been paid off or not. Additionally, the facts are

that the trailer was located on Long's property at the time it was seized.

■■■ Injunction will properly lie to restrain an execution sale, where the judgment debtor has no interest in the property subject to execution at the time of sale, and the sale can cause irreparable harm to the true owner. Article 4642, subsection 4, V.A.C.S. Had the subject property been any other chattel other than that which is defined as a "motor vehicle", the sale to Long on October 17, would have precluded the Nebraska Bank from the subject levy. The evidence, even so, is sufficient to show a probable right in Long to the property and probable injury to him if the execution is permitted to proceed. Transport Co. of Texas v. Robertson Transports, 152 Tex. 551, 261 S.W.2d 549 (1953).

It is obvious from the record that had Long not paid the $3500.00 with instructions that it be given to the San Antonio Bank, the Nebraska Bank's judgment could not have touched anything other than the equity over and above the amount owed by the Blacks to the San Antonio Bank, and the sales price or value of the trailer ultimately. They concede as much in the appellee's brief. The Nebraska Bank knew of the outstanding mortgage and probably the sale to Long. It should not be permitted the windfall that an execution sale might produce herein. We are uncertain of the Nebraska Bank's exact position under the facts as they now exist since it is not a party to this appeal. However, the Nebraska Bank as such is a necessary party for a proper trial on the merits. The Sheriff is only a ministerial officer acting for the owner of the judgment (Nebraska Bank). Allen v. Carpenter, 182 S.W. 430 (Tex.Civ.App.—Ft. Worth 1916); Keystone Pipe & Supply Co. v. Milner, 297 S.W. 1089 (Tex.Civ.App.—Amarillo 1927); Craig v. Pittman & Harrison Co., 250 S. W. 667 (Tex.Com.App.1923); Texas Soap Mfg. Corp. v. McQueary, 172 S.W.2d 177 (Tex.Civ.App.—El Paso 1943). To deny the injunctive relief and permit the Sheriff to sell the trailer and apply all the proceeds to the Nebraska Bank's judgment would not meet the ends of justice in this case.

The equity in the trailer may belong to Mrs. Black and her husband's estate. Long asserts complete ownership. He may or may not be subrogated to the interest of the San Antonio Bank. The execution is defective. If the Blacks are the true owners, the judgment has not been proved as a claim against the estate of Walter Black the deceased. Relative rights to the lien on the trailer have not been determined. As the case now stands, these issues can all be determined in one lawsuit. Such a trial on the merits will avoid a multiplicity of other suits. Everyone can be protected ultimately upon a remand and trial of this case. The equitable jurisdiction of the trial court must be invoked in order to determine the relative rights of all the parties and the damages, if any. Deliberate action by the trial court is essential for the accurate determination of these rights. On such an occasion as we have before us, this can only be secured by the issuing of a temporary decree protecting the status quo. Southwest Weather Research, Inc. v. Jones, 160 Tex. 104, 327 S.W.2d 417 (1959). The case is therefore reversed and remanded to the trial court with instructions to issue a temporary injunction, restraining any sale by the appellee Sheriff until the proper parties are before the court and until such rights are finally determined upon a trial of the merits of this case.

Reversed and remanded. The motion for rehearing is overruled.

SHARPE, Justice (dissenting).

I respectfully dissent. In my view there is no proper basis for reversing the judgment of the trial court which denied a temporary injunction to plaintiff George L. Long, appellant here.

This suit was brought by George L. Long and the Northeast National Bank, San Antonio, Texas, as plaintiffs, against

Claudio Castaneda, Sheriff of Hidalgo County, Texas, and The First National Bank and Trust Company of Lincoln, Lincoln, Nebraska. The Northeast Bank has not joined in this appeal, and George L. Long will be referred to as the sole appellant.

The record reflects that on July 28, 1968 the Nebraska Bank recovered a judgment in the 92nd District Court of Hidalgo County, Texas, in the amount of $37,090.00, plus interest and costs, against Walter I. Black and wife, Vivian L. Black, and Walter I. and Vivian Black, Inc., jointly and severally.

The alias writ of execution on the judgment in favor of the Nebraska Bank was issued on October 19, 1970. On its face it was returnable in 90 days. Under Rule 621, T.R.C.P., execution on a judgment is returnable in thirty, sixty or ninety days as requested by the plaintiff, his agent or attorney. In this case the ninetieth day after issuance of the alias execution was January 17, 1971. The appellee Sheriff levied on the mobile home belonging to the Blacks on January 6, 1971 and posted notice of sale to be held on January 18, 1971. The instant suit was filed by plaintiffs on January 15, 1971 and on that date the trial court granted a temporary restraining order enjoining the appellee Sheriff from holding a Sheriff's sale of the mobile home under the above-mentioned alias execution until a hearing upon appellant's application for temporary injunction, which was set for January 21, 1971. The effect of the temporary restraining order of January 15, 1971 was to prevent the Sheriff's sale on January 18, 1971. When the trial court heard the appellant's application for temporary injunction on January 21, 1971, the Sheriff's sale (under the notice posted for January 18, 1971) was three days past due and ninety-three days had expired from issuance of the alias execution on the judgment against the Blacks.

It is therefore apparent that on January 21, 1971, when the trial court herein denied a temporary injunction, there was not any valid or effective execution outstanding on the judgment against the Blacks, that the Sheriff's notice of sale for January 18, 1971 (which date was 91 days after issuance of the alias execution) was also not valid nor effective, and that it was then impossible for the sale to be carried out in accordance with the alias execution and notice. It is well settled that a writ of execution, such as the one in this case, is of no force and effect after the time in which it is made returnable, and the right of the Sheriff or Constable to sell property under such writ ceases from the date the writ was returnable. See Chance v. Pace, 151 S.W. 843 (Tex.Civ.App., Galveston, 1912, n. w. h.); Tudor v. Orr, 179 S.W.2d 796 (Tex.Civ.App., Amarillo, 1944, n. w. h.) and cases cited in those decisions.

In the instant case, on January 21, 1971 it appeared that a Sheriff's sale of the mobile home could not have been validly held on that date or thereafter unless and until another execution had been issued on the judgment and another notice of sale had been duly posted. The trial judge was entitled to consider such matters when he heard appellant's application for temporary injunction on January 21, 1971. Under the circumstances shown to exist at that time the Sheriff could not have conducted a sale of the mobile home without the above-mentioned further actions being taken. The trial judge was not required to anticipate further events in connection with the controversy and clearly did not abuse his discretion in denying the temporary injunction.

Appellee's motion for rehearing clearly sets out that the posted date of sale was after the return date of the alias execution on the above-mentioned judgment against the Blacks and if the sale had been conducted on January 18, 1971 it would have been void. Under these conditions I do not agree with the statement in the new majority opinion that "The Sheriff contends that he has the right to sell the trailer and by argument in his brief insists he

will again attempt to sell the trailer before the case is tried on the merits" or the statement "However, since the Sheriff still insists apparently that he is entitled to sell the property by his resistance to the injunction in the trial court and here on appeal, a temporary injunction should issue by the trial court until the issue of ownership and damages are determined." In my view there will not be any controversy concerning an attempted sale of the mobile home here in question unless and until another execution is issued on the judgment involved and another notice of sale is posted. I believe that the position of the appellee Sheriff, particularly as shown by his motion for rehearing, is that a sale of the mobile home will not be attempted under the execution and notice which were before the court at the hearing of January 21, 1971.

Appellant Long's sole position in this case is that he was the owner of the mobile home in question and his petition for injunction was based only upon that theory. In this case the action of the trial court must be sustained because appellant Long had a plain, adequate and complete remedy at law. Appellant's petition and evidence wholly failed to negative the availability of the remedy of trial of right of property. See Rules 717–736, T.R.C.P.

Those rules provide in part:

"Whenever a writ of execution . . . is levied upon personal property, and such property, or any part thereof, shall be claimed by any person who is not a party to such writ, such person or his agent or attorney may make affidavit that such claim is made in good faith, and present such affidavit to the officer who made such levy (Rule 717); . . . he shall also execute and deliver to the officer . . . his bond . . . payable to the plaintiff in such writ, for an amount equal to double the value of the property so claimed . . . Upon the approval of such bond and delivery of the property to the claimant, the same shall be deemed in custodia legis, and shall not be taken out of his possession by any other like writ or writs (Rule 718); . . . The officer receiving such oath and bond shall deliver the property so claimed to the person so claiming it (Rule 720); . . . the clerk of the court . . . shall docket the same . . . (Rule 725); . . . on the appearance day of such court, if both parties to the claim proceedings appear, then the court . . . shall enter an order directing the making and joinder of issues by the parties (Rule 726); . . . trial shall be as nearly as may be the same as in other cases . . . (Rule 729); . . . If the property was taken from the possession of the claimant, the burden of proof shall be on the plaintiff . . . (Rule 730)."

The case of Hawkins v. Graham, 81 S.W.2d 754 (Tex.Civ.App., San Antonio, 1935, writ refused) is closely in point. There it appeared that a constable in Hidalgo County levied on an oil well drilling outfit and advertised the same for sale as the property of J. V. Hawkins, pursuant to an execution and order of sale issued by the district court of Webb County. E. A. Graham then filed suit to enjoin the threatened sale on the ground that he was the owner of the seized property. The trial court granted a temporary injunction prohibiting the sale and Hawkins appealed. The Court of Civil Appeals cited Article 7402 and 7403, R.C.S.1925, which now have been carried forward unchanged as Rules 717 and 718, T.R.C.P. The court, referring to the remedy of trial of right of property, then held in part as follows:

"It is perfectly obvious that by this remedy appellee would have been afforded every protection sought by him in this equitable proceeding, and, as appellee alleged no facts which would excuse him from pursuing that remedy, he was not entitled to the extraordinary writ prayed for and granted to him. West Texas

Utilities Co. v. Farmers' State Bank (Tex.Civ.App.) 68 S.W.2d 648.

The only ground upon which appellee sought to justify the resort to this equitable remedy was the allegation that appellant was insolvent and could not respond in damages. That being true, appellee could procure nothing in this action but a recovery of the property, which, being already in the hands of the officer, was at once available to him in the statutory proceeding for the trial of the right of property.

The judgment is reversed, and the injunction dissolved."

It conclusively appears in this case that appellant Long could have effectively protected his alleged ownership in the mobile home involved by utilizing the remedy of trial of right of property. Rules 717–736, T.R.C.P. Long did not need an injunction of the district court in order to protect his claimed right, and he would have been afforded all the protection to which he might have been entitled by pursuing the remedy provided by law. In this situation the action of the trial judge was clearly within his discretion and there was no abuse of it in this case.

There are additional reasons for holding that the trial court did not abuse its discretion in denying the temporary injunction sought by Long. The evidence offered by appellant left much to be desired in connection with his claim of ownership. It is undisputed that there was no attempt to comply with Art. 1436–1, Vernon's Ann. Penal Code, the certificate of Title Act. The evidence in this case shows the mobile home to be registered with the Texas Highway Department in the names of Walter I. and Vivian Black. Long testified in substance that he did not intend to receive the papers nor title to the mobile home until he had paid for it. He agreed that he had not paid for it but said he had put out enough to be entitled to the papers, and he was not worried about the accounting of it. The record shows that Long signed a check dated October 17, 1970, in the amount of $3500.00 payable to Vivian L. Black, which bears a notation "Aristocraft Mobile Home". This check is endorsed by Vivian L. Black and bears the further stamped endorsement of Northeast National Bank of San Antonio, Texas, dated December 26, 1970. Mrs. Black did not testify in the case and there was no other evidence showing that the check in question was actually used to pay off the indebtedness and discharge the lien of the Northeast Bank of San Antonio against the mobile home. In response to questions asked by the trial judge, Long conceded that on October 17, 1970 he still expected to get some papers on the mobile home and he still had not received them. Long further said in substance that when he made the $3500.00 check out to Mrs. Black, he expected her to use it to pay off the San Antonio Bank; that after over two months had expired Long told Mrs. Black to get the check in; that Mrs. Black thereafter told him she had done so and that the papers would be coming through. Long specifically said that the papers he referred to were "The original title from the bank to her and when she got that, well, then she would title it over to me from that original title. That is what I expected." Long also testified in substance that after Mr. Black died he thought about the fact that there might be an estate involved and he knew there were certain requirements of law to be met where an estate is involved.

The burden of proof in this temporary injunction proceeding was upon the appellant Long. He claimed to be the owner of the mobile home in question and had the burden to establish a probable right in such respect. The record is not satisfactory concerning the will or estate of Walter I. Black. There is some indication that application to probate his will had been made but that the will had not actually been admitted to probate. None of the papers relating to such will were actually admitted into evidence. There is no evidence in the record to show that Mrs. Black alone had the right to transfer the mobile home to

Long. Long failed to carry his burden in such respect. There was a complete absence of evidence concerning the estate of Mr. Black and how ownership of the mobile home might be affected by administration of his estate. The trial judge was entitled to believe and hold that Long had not carried his burden to show a probable right of ownership under such conditions, and to deny the temporary injunction on that basis.

The pleadings in this case do not raise any issues concerning subrogation rights of Long. *His claim was solely that of ownership of the mobile home.* If Long should elect to rely upon subrogation rights because of his alleged payments, he would be entitled to amend and assert such rights, which are presently not in danger upon the record now before us. If additional parties are necessary or proper, the litigants and the court can take appropriate action in such respect.

In Texas Foundries v. International Moulders & Foundry Workers' Union, 151 Tex. 239, 248 S.W.2d 460 (1952) our Supreme Court discussed the powers of the Courts of Civil Appeals in the review of *temporary injunction cases in part as follows:*

"The Court of Civil Appeals held that the acts of respondents and those acting with them, above outlined, were unlawful, but concluded that 'we do not believe that it reasonably follows that even though all such unlawful acts of conduct be enjoined, that a peaceful picketing of the entrances of the appellee's plant, in such a manner as is guaranteed by law to strikers in a bona fide labor dispute, would result in future violence.' The court does not hold that there was a clear abuse of discretion by the trial judge. What it holds is that in its judgment there will be no future violence if picketing is carried on under the modified injunction. *It fell into the error of substituting its judgment for that of the trial judge. Such a substitution does not accord with the approved method of review of a temporary injunction. The*

*appellate court cannot substitute its discretion for that of the trial court. It has no independent discretion in reviewing such an order; its sole function is to determine whether there has been a clear abuse of discretion by the trial judge.* While the trial judge in this case may have erred in his judgment as to what would be the result of future picketing, it cannot be said that this record discloses an abuse of discretion by him. . . . " (Emphasis supplied). 248 S. W.2d 463.

This rule was re-iterated by the Court in Briscoe Ranchers, Inc. v. Eagle Pass Independent School District, 439 S.W.2d 118, 120 (Tex.Civ.App., San Antonio, 1969, ref. n. r. e.) as follows:

"Certain well-established rules are applicable to our review of this case. The trial judge is endowed with broad discretion to grant or deny a temporary injunction. *It is therefore well settled that the scope of appellate review from such an order is limited to the narrow question of whether the action of the trial judge in granting or denying the temporary injunction constitutes a clear abuse of discretion.* Janus Films, Inc. v. City of Fort Worth, 163 Tex. 616, 358 S.W.2d 589 (1962); Texas Foundries v. International Moulders & Foundry Workers' Union, 151 Tex. 239, 248 S.W. 2d 460 (1952)." (Emphasis supplied).

This Court in Skinner Corp. v. Calallen Independent School District, 409 S.W.2d 929, 932 (Tex.Civ.App., Corpus Christi 1966, n. w. h.) held in part as follows:

"The granting or refusing of a temporary injunction is a matter that rests within the sound discretion of the trial court, and unless it appears from the record that the court has abused that discretion, the action of the trial court will be upheld. Southwestern Greyhound Lines, Inc. v. Railroad Commission of Texas, 128 Tex. 560, 99 S.W.2d 263, 270, 109 A.L.R. 1235. In an appeal from an order either granting or refusing a temporary injunction, as in other types of appeals, the appellate court is required to view all

evidence and legitimate presumptions in the light most favorable to the judgment of the trial court's exercise of discretion, and where the evidence is in conflict, an abuse of discretion on the part of the trial court is not shown. 31 Tex.Jur.2d 345, Injunctions § 224; same, p. 350, § 225; Armstrong v. Armstrong, Tex.Civ. App., 295 S.W.2d 542; Wilson v. Whitaker, Tex.Civ.App., 353 S.W.2d 945; City of Corpus Christi v. Gilley, Tex.Civ.App., 379 S.W.2d 84, writ ref. n. r. e."

When the rules announced in the above-cited cases are applied in this case, it is my view that a reversal of the judgment rendered by the trial court, as has been ordered by the majority opinion, amounts to a substitution of the judgment of this Court for that of the trial court. In my view such reversal should not be ordered because it clearly appears that there was no abuse of discretion in refusing a temporary injunction to appellant in this case.

I would affirm the judgment of the trial court. Since the original majority opinion has been withdrawn and a new majority opinion is now substituted therefor, the appellee will be entitled to file a further motion for rehearing within fifteen days as is provided by Rule 458, T.R.C.P.